**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 05-cv-02163-REB-MEH

HEALTH GRADES, INC. a Delaware corporation,

    Plaintiff,

v.

HAMOT MEDICAL CENTER, a Pennsylvania corporation,

    Defendant.

---

**ORDER DENYING HAMOT MEDICAL CENTER'S
MOTION TO DISMISS PURSUANT TO F.R.C.P. 12(b)(2)**

---

**Blackburn, J.**

The matter before me is defendant **Hamot Medical Center's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2)** [#11], filed December 13, 2005. I deny the motion.

## I. JURISDICTION

I have subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship), and 1367 (supplemental jurisdiction).

## II. STANDARD OF REVIEW

Defendant seeks to dismiss this action on the ground that this court lacks personal jurisdiction over them. *See* **FED.R.CIV.P.** 12(b)(2). When the issue is contested, the burden is on the plaintiff to prove that jurisdiction exists. *Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir. 1995). Nevertheless, at this early stage of the litigation, that burden is light, and when, as here, the motion to dismiss is decided on the papers, the plaintiff need make only a *prima facie* showing that jurisdiction exists. *Id*. The non-

conclusory averments of the complaint must be taken as true to the extent they are not contradicted by the defendant's affidavits, and all factual disputes must be resolved in favor of the plaintiff. *Id*.

### III. ANALYSIS

Plaintiff Health Grades, Inc., is a Delaware corporation headquartered in Golden, Colorado, that publishes ratings and other information about hospitals, physicians, and other healthcare providers on its Internet website. In early 2005, defendant, Hamot Medical Center, a hospital located in Erie, Pennsylvania, learned that it had received various awards from plaintiff. Defendant's vice president of corporate communications, Charles Hagerty, went to plaintiff's website, where he paid for and received copies of the reports pertinent to defendant.

In order to access those reports, Hagerty first was required to "click through" a text box containing a Limited License and User Agreement (the "User Agreement"). The text box itself measured approximately three by six inches and showed eight to twelve lines of the text of the User Agreement at one time. The viewer could scroll down through the document in the text box or print the entire document via a hyperlink found at the bottom left-hand corner of the same screen. The User Agreement contains the following relevant language:

> This User Agreement is made in, and will be construed and enforced in accordance with, Colorado law (without regard to its provisions governing conflicts of law), as applied to agreements entered into and completely performed in Colorado. Any action arising out of the content of this Site, your use of the Site Materials, or any action to enforce this User Agreement will be brought only in the federal or state

>       courts presiding in Denver, Colorado, U.S.A., and both parties
>       expressly agree to be subject to the jurisdiction of such courts.

(Plf. Resp. App., Exh. A-1 at 7, ¶ 18.)  This language is located near the end of the document, on the last of seven printed pages.  Asked if he agreed to the terms of the User Agreement, Hagerty clicked on a button marked "Yes" and was then allowed access to the reports.

Plaintiff claims now that defendant has used its information in violation of the User Agreement and its federal copyright and trademark rights.  Based on the forum selection clause of the User Agreement, plaintiff filed suit in the District Court of the City and County of Denver, Colorado.  Defendant removed the case to this court, and now seeks to dismiss, arguing that it does not have the requisite minimum contacts necessary to support the assumption of personal jurisdiction over it in this forum.  *See International Shoe Co. v. State of Washington, Office of Unemployment Compensation & Placement*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945); *Kuenzle v. HTM Sport-Und Freizeitgeräte AG*, 102 F.3d 453, 455 (10th Cir. 1996).  Alternatively, defendant maintains that even if it minimum contacts exist, it would offend traditional notions of fair play and substantial justice to subject it to suit in this jurisdiction.  *See Asahi Metal Industry Co. v. Superior Court of California, Solano County*, 480 U.S. 102, 113, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987); *Benally v. Amon Carter Museum of Western Art*, 858 F.2d 618, 626 (10th Cir. 1988).

The problem with framing the argument in this manner is that defendant's concession to the terms of the User Agreement, including the forum selection clause,

3

makes the due process minimum contacts analysis irrelevant. *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 n.14, 105 S.Ct. 2174, 2182 n.14, 85 L.Ed.2d 528 (1985) (forum selection clause gives express or implied consent to jurisdiction of the court, and enforcement of such provisions does not offend due process); *Electronic Realty Associates, L.P. v. Vaughan Real Estate, Inc.*, 897 F.Supp. 521, 523 (D. Kan. 1995) ("To the extent that parties have consented to personal jurisdiction in a certain forum, application of a forum state's long-arm statute and analysis of a party's contacts with the forum state are unnecessary."). Forum selection clauses are *prima facie* valid, and a party contesting that presumption bears a heavy burden of proof. *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10, 92 S.Ct. 1907, 1913, 32 L.Ed.2d 513 (1972); *Riley v. Kingsley Underwriting Agencies, Ltd.*, 969 F.2d 953, 957 (10th Cir.), *cert. denied*, 113 S.Ct. 658 (1992). Such clauses are to be enforced absent a clear showing of fraud or overreaching, or that enforcement would be unreasonable or unjust. *M/S Bremen*, 92 S.Ct. at 1916. This same rule applies equally to negotiated and form contracts. *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595, 111 S.Ct. 1522, 1528, 113 L.Ed.2d 622 (1991) ("[F]orum-selection clauses in form passage contracts are subject to judicial scrutiny for fundamental fairness.").[1]

Defendant presents two principal arguments in an attempt to surmount the presumptive validity of the forum selection clause. First, it argues that litigating this matter in Colorado would be inconvenient, since its operations are confined to the greater Erie,

---

[1] Thus, the fact that the User Agreement was a contract of adhesion, as defendant points out, is not in itself sufficient to support a conclusion that enforcement of the forum selection clause would be unreasonable. *See Carnival Cruise Lines*, 111 S.Ct. at 1527.

Pennsylvania, area. Contrary to defendant's argument, the factors to be assessed when considering whether the assumption of personal jurisdiction offends traditional notions of fair play and substantial justice under an *International Shoe* analysis are not helpful when a party has consented to jurisdiction.[2] In the latter circumstance, the terms of the contract can be avoided only by showing that the inconvenience of the chosen forum is so serious that the party will effectively be deprived of its day in court by being forced to litigate there. *See Carnival Cruise Lines*, 111 S.Ct. at 1528; *Riley*, 969 F.2d at 958; *Wagner International, LLC v. Mandal Alt Co.*, 2005 WL 1606900 at *6 (D. Colo. July 8, 2005). Defendant has failed to meet this heavy burden. Colorado is not a "remote alien forum." *See Carnival Cruise Lines*, 111 S.Ct. at 1528; *cf. Wagner International*, 2005 WL 1606900 at *7 (finding forum selection clause unenforceable where defendant located in Mongolia would be forced to litigate in Colorado). Although undoubtedly it would be more convenient for defendant to litigate this case in Pennsylvania, that fact alone is insufficient to invalidate the forum selection clause.

Second, defendant argues that it did not have actual notice of the presence of the forum selection clause in the User Agreement.[3] In this regard, it points out that the forum

---

[2] Although defendant relies heavily on Chief Judge Babcock's opinion granting a Rule 12(b)(2) motion in another case implicating plaintiff's User Agreement, that case is clearly distinguishable. It is clear that the court's ruling was based on the lack of evidence that any individual with authority to bind the defendant had accepted the terms of the User Agreement. (*See* Order at 10-13 [#19], filed September 1, 2005, in *Health Grades, Inc. v. Decatur Memorial Hospital*, Civil Case No. 04-cv-01465-LTB-PAC.) The substance of the court's discussion of the fair play and substantial justice issue was framed in terms of the minimum contacts analysis, and not with an eye toward assessing the existence of jurisdiction where a party had been shown to have accepted the terms of the User Agreement and its attendant forum-selection clause.

[3] This argument is raised for the first time in defendant's reply brief. *See Liebau v. Columbia Casualty Co.*, 176 F.Supp.2d 1236, 1244 (D. Kan. 2001) (court does not consider issues raised for the first time in a reply brief). Because I find the argument without merit in any event, I will exercise my discretion

5

selection clause was located near the bottom of a seven-page document, only eight to twelve lines of which could be read at one time in the text box displayed on the user's computer screen. I find this argument unpersuasive. Defendant had the option to read the entire agreement before clicking on the button indicating acceptance of its terms, either by scrolling down through the text box or by clicking on the hyperlink in the lower left-hand corner of the same screen. Although the forum selection clause was near the end of the User Agreement, there is no allegation or evidence that such is an atypical location for choice-of-law provisions in contracts. The forum selection clause was in the same size font and typeface as the rest of the contract. Moreover, there is no allegation or evidence that the type of text box in which the User Agreement was displayed was not similar to those encountered routinely when purchasing goods or services over the Internet, and Hagerty acknowledges that he knew the text box contained "some type of license or user agreement." (Def. Motion App., Exh. 3 at 2,   ¶ 8). Finally, defendant was required to and did affirmatively manifest assent to the User Agreement by clicking on the "Yes" button.[4]

Indeed, numerous courts have upheld the validity of forum selection clauses in "click-wrap" agreements such as the one at issue here, at least when the user was

---

and address it.

[4] These facts readily distinguish this case from *O'Brien v. Okemo Mountain, Inc.*, 17 F.Supp.2d 98 (D. Conn. 1998), on which defendant relies. The forum selection clause in *O'Brien*, located on the back of a ski-lift ticket, was not easily accessible because of its placement on a wicket on the skier's jacket, and was printed in very small typeface with no readily distinguishable characteristics. *See id*. at 103. By contrast, Hagerty admitted that he knew the text box contained an agreement of some type, that agreement was readily available to anyone inclined to read it, and Hagerty affirmatively manifested his assent by clicking on the indicated button.

required to affirmatively indicate agreement to the terms of the contract by clicking on a button stating "I Agree" or "Yes."  *See, e.g.*, *Hugger-Mugger, L.L.C. v. Netsuite, Inc.*, 2005 WL 2206128 at *6 (D. Utah Sept. 12, 2005); *Novak v. Overture Services, Inc.*, 309 F.Supp.2d 446, 451-52 (E.D.N.Y. 2004); *Hopkins v. Trans Union, L.L.C.*, 2004 WL 1854191 at *2 (D. Minn. Aug. 19, 2004); *Koresko v. RealNetworks, Inc.*, 291 F.Supp.2d 1157, 1162-63 (E.D. Cal. 2003); *DeJohn v. The .TV Corp. International*, 245 F.Supp.2d 913, 915-16, 921 (N.D. Ill. 2003); *Koch v. America Online, Inc.*, 139 F.Supp.2d 690, 692, 694-95 (D. Md. 2000); *Kilgallen v. Network Solutions, Inc.*, 99 F.Supp.2d 125, 127, 129-30 (D. Mass. 2000); *Barnett v. Network Solutions, Inc.*, 38 S.W.3d 200, 203-04 (Tex. App. – Eastland 2001, pet. denied); *Caspi v. Microsoft Network, L.L.C.*, 732 A.2d 528, 530-32 (N.J. Sup. 1999).  *Cf. Ticketmaster Corp. v. Tickets.com, Inc.*, 2000 WL 1887522 at *5 (C.D. Cal. Aug. 10, 2000) (denying motion for preliminary injunction based on insufficient proof of agreement to plaintiff's posted terms of use based on fact that user was not required to click on "I Agree" button before purchasing tickets from plaintiff's website), *aff'd*, 2 Fed.Appx. 741 (9th Cir. 2001).  These authorities are persuasive and lend further ballast to my conclusion that defendant's claim of lack of actual notice of the forum selection clause cannot withstand scrutiny.

In essence, defendant's argument regarding notice is simply an admission that it failed to read the entire User Agreement before accepting its terms, but such failure has never been a basis for avoidance of a contract, *see Intermountain Systems, Inc. v. Edsall Construction Co.*, 575 F.Supp. 1195, 1197-98 (D. Colo. 1983), and that fact is not altered simply because the contract is offered and accepted in the virtual world.  An

enormous amount of commerce is now transacted via the Internet, and parties that offer goods or services in that medium, which may be ordered by users in distant locales, should be allowed to insert some measure of regularity and predictability into any potential litigation arising from those transactions.  *See Carnival Cruise Lines*, 111 S.Ct. at 1527; *Koch*, 139 F.Supp.2d at 694.  So long as there is no fraud or overreaching involved, the onus must fall on the user to read and appreciate all terms of the offer it accepts in choosing to conduct business over the Internet.

### IV.  CONCLUSION

For these reasons, I find and conclude that defendant is bound by the forum selection clause of the User Agreement.  Accordingly, its motion to dismiss for lack of personal jurisdiction should be denied.

**THEREFORE, IT IS ORDERED** as follows:

1.  That **Hamot Medical Center's Motion to Dismiss Pursuant to F.R.C.P. 12(b)(2)** [#11], filed December 13, 2005, is **DENIED**; and

2.  That **Health Grades, Inc.'s Unopposed Motion for Leave to File Surreply in Opposition to Hamot Medical Center's Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(2)** [#15], filed January 26, 2006, is **DENIED AS MOOT**.

Dated February 27, 2006, at Denver, Colorado.

**BY THE COURT:**

**s/ Robert E. Blackburn**
**Robert E. Blackburn**
**United States District Judge**